JjDUFRESNE, Judge.
This is an appeal by Doris N. Ellis from an adverse determination of her workman’s compensation claim against Alton Ochsner Medical Foundation (AOMF), her former employer, for continuing benefits. Because we find no manifest error in the factual findings of the hearing officer, we must affirm her decision denying further benefits.
The procedural facts are not seriously disputed. On November 7, 1984, claimant suffered a job related injury to her neck in a hospital elevator when it dropped suddenly and stopped abruptly some 18 inches below the floor level. She was treated conservatively for this injury for several months, but eventually underwent a cervical fusion by Dr. Kenneth Vogel, a neurosurgeon. She was originally paid workers compensation at a rate of $537.58 per month beginning November 8, 1984, the day after the accident. Sometime in early 1985, AOMF sought review of this claim by the Office of Worker’s ^Compensation, and on April 15, 1985, a recommendation that benefits be continued was issued by that office and accepted by the employer. Almost four years later, AOMF again sought review by the Office of Worker’s Compensation seeking to terminate benefits on the grounds that claimant had recovered and was able to return to work. On February 2, 1989, a recommendation issued stating that claimant-was entitled to temporary total disability benefits from the date of injury until May 17, 1988, “the date of her release to return to work.” It further recommended that she be paid supplemental earnings benefits through February 2, 1989, “the date of termination of claimant’s disability.” Finally, it provided that she “may be entitled to continuing supplemental benefits” after that date if she were unable to earn at least 90% of her previous wages because of her injury. This recommendation was not rejected by claimant within thirty days of issuance and thus it was conclusively presumed to have been accepted as per prior La.R.S. 23:1310.1.
In the meantime, in October of 1985, claimant filed suit against the elevator company as a third-party tortfeasor, and the employer intervened to recover some $46,000.00 which it had paid in compensation and medical expenses. A jury trial in March of 1989, resulted in a verdict of $350,000.00, and the defendant elevator company appealed. Prior to that verdict, AOMF had assigned its intervention to the elevator company for $35,-000.00, and apparently reserved its rights to offset future compensation, if'any, by the amount of any judgment above its original claim of some $46,000.00. Several months later AOMF entered into an agreement with claimant whereby hit would continue paying compensation at the rate of $537.58 per month until the case was submitted for decision to the Fourth Circuit Court of Appeal. Claimant for her part agreed to reimburse AOMF the amount of these continuing payments if the final judgment in the case was sufficient to satisfy the intervention as well as these additional payments. It appears that the matter was originally submitted to the appellate court on August 1, 1990, but benefit payments were continued until Mai’ch 31, 1991. For reasons of no consequence here, the appeal was not finally resolved until January, 1992, Ellis v. Dover Elevator Co., 597 So.2d 1 (La.App. 4th Cir.1992). The eventual outcome of the matter was a judgment in claimant’s favor of $200,000.00, plus about $75,000.00 in interest. There is nothing in the record to show the amount of the post-trial benefits paid by AOMF or whether they sought reimbursement of these funds once the tort suit judgment was final.
The present matter was instituted by claimant on March 31, 1992. Her basic assertions were 1) that there were outstanding medical bills related to her original injury that AOMF had not paid, and 2) that she was totally and permanently disabled by the accident and thus entitled to continuing compensation payments. After hearing testimony and evidence, the hearing officer determined that there was no showing that any of the *117 medical bills presented for payment were related to claimant’s workplace injury. She further found that claimant failed to prove any change in her medical condition since the 1989 certificate was issued by the Office of Workman’s Compensation, and in the absence of such a change, La.R.S. 23:1310.8(B) precluded her |4from receiving further benefits. Claimant has now appealed that determination.
It is now well settled that the standard of appellate review of determinations by hearing officers in workman’s compensation cases is the same as that for review of district court judgments, i.e. whether the decision is based on manifestly erroneous factual findings, Doucet v. Baker Hughes Production Tools, 93-3087 (La. 3/11/94) 635 So.2d 166. Our review of the record discloses no such eiTor, and we must therefore affirm the decision of the hearing officer.
The evidence before the hearing officer consisted for the most part of transcripts from the trial of the tort suit. In those transcripts, Dr. Vogel, the neurosurgeon who treated her for her original neck injury testified as follows. He first examined her in January, 1985, for her neck injury. His initial impression was a lumbosacral strain which was resolving satisfactorily and a herniated cervical disc. Claimant also informed him that she had undergone a lumbar lami-nectomy in the 1970’s and had complete relief of pain from that procedure. On March 27, 1985, he performed an anterior spinal fusion at the C6-7 level. Although claimant experienced pain and problems swallowing after the procedure, by a January 2, 1986, examination she was approaching maximum improvement. In his January 8,1986, report of that examination, Dr. Vogel felt that she had incurred an approximate 10-15% whole body impairment and should avoid lifting, pushing, or pulling more than 35 lbs. or repeated bending, flexing or hyperextending her neck in the future. He also stated that she was expected to reach maximum improvement about one year from the | soperation. A June 2, 1986, report reiterated the 10-15% impairment and weight and flexing restrictions, and stated that “she is considered to have been totally disabled for gainful employment until the time of her maximum medical improvement which was reached on 3/27/86.” On September 4, 1986, claimant returned for a final post-operative check-up and was found to have mild neck pain and a mild limitation of movement in the neck.
The next visit to this doctor was on June 4, 1987, some ten days after claimant was in an automobile accident. The doctor stated that she had been in good health before the accident, but then had suffered an immediate onset of low back, left leg, neck and left shoulder symptoms after the accident. He further stated that after this accident she never again recovered to the point that she had reached on her last post-operative visit of September 4, 1986.
In a May 7, 1988, letter to counsel for AOMF, Dr. Vogel stated: The above captioned patient has reached maximum medical improvement after her surgery of 3/27/85. I would defer to a vocational specialist as to whether this patient can or cannot return to gainful employment if she will take into account her disability which is as reported and has not changed from that of 1/8/85, a copy of which is enclosed.
The doctor also noted in a later report of January 20, 1993, that claimant had further exacerbated her neck and back pain when she was a passenger in a car which struck a tree. He referred to his previous reports for the etiology of claimant’s problems and reiterated that she had incurred a “10-15 percent permanent partial total body medical impairment,” and that she should avoid lifting, pulling or pushing weights of over 35 lbs., and avoid extending or over flexing her neck.
|6Nancy Favaloro, recognized as an expert in health and vocational rehabilitation, had testified in the tort suit and also appeared in person in the present matter. She testified that she had interviewed claimant at the request of AOMF in August, 1987. Based upon claimant’s education and work experience, as well as her medical condition as represented by Dr. Vogel in his various reports up through his letter of May 17, 1988, this expert was of the opinion that claimant could successfully perform a number of jobs. She further said that she had contacted several employers who expressed a willingness to interview a person of claimant’s abilities *118 and restrictions, and had so informed her and her attorney, but received no inquiries for further details from them. The expert further noted that she had reviewed a January 20, 1993 follow-up report from Dr. Vogel and remained of the opinion that there were jobs that claimant could perform with those restrictions of weight handling and flexion which had consistently been set forth by this physician.
Claimant also testified in person at the hearing. She said that she had experienced disabling pain from the time of her injury to the present. One of her sisters testified that she saw her sister often and that she was in apparent pain most of the time. Claimant did admit that the automobile accidents had made her problems worse, but insisted that they were all related to the elevator accident.
Claimant presented a number of medical bills at the hearing which she alleged were related to her on-the-job injury. While several of these bills appear to have been incurred in those treatments, others were dated after the Automobile accident of May 23, 1987.
|7On the basis of the above testimony, the hearing officer found that claimant had not shown that she is totally disabled from working. She also found implicitly that claimant could perform various jobs at a salary of at least 90% of her prior earnings in that she ruled that no supplemental earnings benefits were due. Finally, she found that the various medical bills presented for payment were either not shown to be related to the elevator accident, or not shown to be outstanding.
In this court’s opinion, these findings are certain3y based upon a permissible view of the evidence. We particularly note that her treating surgeon, Dr. Vogel, was of the opinion that claimant had reached maximum recovery, with certain weight and flexion, restrictions, as of September of 1986. At that time she had only mild neck pain and a mild limitation of neck motion. When she returned to this doctor after the May 23, 1987, automobile accident, she then reported to him back, shoulder and leg pain, as well as increased neck pain. It is clear that a fact finder could reasonably conclude from this evidence that claimant had recovered from the elevator accident at least by the spring of 1987, and that her additional problems were caused by the later car accident. As to the medical bills, claimant does not urge in brief that any of these bills remain outstanding, and admits that prior to the hearing almost all of the items had been satisfied. Rather, she urges that she is entitled to penalties and attorney fees because AOMF did not pay some of the outstanding balances timely. Again, the trier of fact determined that claimant had failed to show that any of the bills were unpaid, and further found that she had not even shown the claimed bills to be related to the elevator accident. |gWe have reviewed the evidence bearing on the medical expenses and can only conclude that there was no manifest error in the findings made on this point by the hearing officer.
As a final matter, we note that claimant argues that AOMF relinquished it right to set off any future compensation that might be owing against the third-party tort award. The hearing officer rejected this argument and found instead that the employer had specifically reserved this right. While it appears that this factual finding is correct, we need not determine that question here. Because we have affirmed the determination that no further compensation is owing to claimant, the issue of whether the employer is in fact entitled to offset any such compensation is moot.
For the foregoing reasons, the determination that the claimant is not entitled to any further compensation benefits or any other past medical payments is hereby affirmed.